IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| KOLONI REKLAM, SANAYI, TICARET LTD/STI, | )<br>)<br>) | |
| Plaintiff, | )<br>) | |
| v. | )<br>) | Case. No. 1:16-cv-00285-SLR |
| BELLATOR SPORT WORLDWIDE LLC, | )<br>)<br>) | |
| Defendant. | ) | |

**DEFENDANT'S OPENING BRIEF IN**
**SUPPORT OF ITS MOTION TO DISMISS**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jon E. Abramczyk (#2432)
D. McKinley Measley (#5108)
Daniel T. Menken (#6309)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jabramczyk@mnat.com
dmeasley@mnat.com
dmenken@mnat.com
    *Attorneys for Bellator Sport Worldwide LLC*

May 17, 2017

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ...........................................................................................................1

STATEMENT OF FACTS ...............................................................................................1

ARGUMENT....................................................................................................................3

    I.    KRST DOES NOT STATE A CLAIM FOR BREACH OF THE BELLATOR OPERATING AGREEMENT .............................................................3

    II.    KRST DOES NOT STATE A CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING..........................................................................................................5

    III.    BOTH CLAIMS SHOULD BE DISMISSED FOR FAILING TO IDENTIFY ANY DAMAGES RESULTING FROM BELLATOR'S ALLEGED BREACHES ...............................................................7

    IV.    THE AMENDED COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE ........................................................................................8

CONCLUSION................................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allen v. El Paso Pipeline GP Co., L.L.C.*,
   2014 WL 2819005 (Del. Ch. June 20, 2014)......................................................................6

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).....................................................................................................1, 3, 5

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...........................................................................................................3, 5

*Black Horse Capital, LP v. Xstelos Hldgs., Inc.*,
   2014 WL 5025926 (Del. Ch. Sept. 30, 2014) ......................................................................7

*Blaustein v. Lord Baltimore Capital Corp.*,
   2012 WL 2126111 (Del. Ch. May 31, 2012) ......................................................................5

*County of Los Angeles v. Davis*,
   440 U.S. 625 (1979)............................................................................................................4

*Fortis Advisors LLC v. Dialog Semiconductor PLC*,
   2015 WL 401371 (Del. Ch. Jan. 30, 2015).........................................................................7

*Koloni Reklam, Sanayi, Ticaret LTD/STI v. Viacom, Inc.*,
   2017 WL 726660 (D. Del. Feb. 23, 2017) ..........................................................................8

*Kyle v. Apollomax, LLC*,
   2013 WL 5954782 (D. Del. Nov. 1, 2013) .........................................................................4

*LaPoint v. AmerisourceBergen Corp.*,
   2007 WL 2565709 (Del. Ch. Sept. 4, 2007) .......................................................................7

*Weiss v. Regal Collections*,
   385 F.3d 337 (3d Cir. 2004)................................................................................................4

**Rules and Statutes**

F.R.C.P 12(b)(1) ........................................................................................................................1

F.R.C.P. 12(b)(6) ...................................................................................................................1, 3

1.

Defendant Bellator Sport Worldwide LLC ("Bellator") hereby submits this Opening Brief in Support of Its Motion to Dismiss with prejudice, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Plaintiff's First Amended Complaint (the "Amended Complaint").

## INTRODUCTION

The Amended Complaint is the fourth attempt by Plaintiff Koloni Reklam, Sanayi, Ticaret LTD/STI ("Plaintiff" or "KRST") to prosecute meritless claims in a transparent effort to force a buyout at a premium of its one percent ownership interest in Bellator, a mixed martial arts promotion company. Like KRST's three earlier complaints, the Amended Complaint is fatally flawed. In Count I, KRST re-treads the breach of contract claim that this Court previously dismissed (and considered dismissing with prejudice) by adding conclusory allegations that Bellator's compliance with the actual requirements of the contract between Bellator and KRST—*i.e.*, Bellator's obligation to furnish financial statements to KRST—is insufficient because KRST believes that the financial statements that Bellator provided are not "accurate and complete." But KRST utterly fails to plead any factual allegations as to how or why the statements are inaccurate or incomplete. Nor does the Complaint allege any damages. Such conclusory allegations do not meet the Supreme Court's requirements under *Ashcroft v. Iqbal*. Likewise, the Amended Complaint's claim in Count II for breach of the implied covenant of good faith and fair dealing fails to state a claim under black letter Delaware law. Plaintiff's claims must, once again, be dismissed.

## STATEMENT OF FACTS

Bellator is a Delaware limited liability company that was formed in September 2008. Am. Compl. ¶ 6, 10. It currently has two members: (1) MTV Networks ("MTVN"),

which holds approximately 99% of Bellator through MMA HoldCo, Inc.; and (2) KRST, a company based in Turkey that holds approximately 1%. Am. Compl. ¶¶ 5, 14.

As a Delaware LLC, Bellator is governed by an Operating Agreement, and is managed by a three-member management committee (the "Management Committee").[1] Ex. A § 4.1(b) (as amended Oct. 20, 2014). The Operating Agreement provides that each member has the right to inspect certain of the Company's books and records (listed in Sections 7.1(a) and 7.2(a) of the Agreement), so long as the member's purpose for inspection is "reasonably related to such Member's interest as a member of [Bellator]." Ex. A § 7.2(b).

In addition, Section 7.2(c) of the Operating Agreement requires Bellator to deliver certain periodic financial reports to its members, including audited and unaudited balance sheets, income statements, and cash flow statements. Ex. A § 7.2(c). Specifically, Section 7.2(c) of the Operating Agreement provides:

> <u>Periodic Reports</u>. The Company shall cause to be delivered to each Member: (i) within forty-five (45) days following the end of each of the first three (3) Fiscal Quarters of each Fiscal Year (provided that such deadline may be extended to sixty (60) days if such deadline occurs in the middle of a Season of the Bellator Fighting Championship), unaudited balance sheets of the Company and its consolidated subsidiaries (if any) as at the end of such Fiscal Quarter, and unaudited income statements, cash flow statements and changes in members' equity for the Company and its consolidated subsidiaries (if any) for such Fiscal Quarter and for the period from the beginning of the Fiscal Year to the end of such Fiscal Quarter, and which commencing January 1, 2012 sets forth in comparative form figures for the corresponding period in the prior Fiscal Year, all in reasonable detail and fairly presenting the financial position and the results of operations of the Company and its consolidated subsidiaries (if any) as at the date thereof and for

---

[1] Pursuant to the Operating Agreement, MTVN has the right to designate the members of the Management Committee so long as MTVN and/or its Affiliates collectively hold at least a 15% interest. *See* Ex. A, Amendment No. 7 § 4.1(b).

>    the Fiscal Quarter then ended, prepared in accordance with GAAP (other than the absence of footnotes and subject to normal year-end audit adjustments) with the financial statements required to be delivered pursuant to Section 7.2(c)(ii) below; and (ii) within ninety (90) days following the end of each Fiscal Year, consolidated audited balance sheets of the Company and its consolidated subsidiaries (if any) as at the end of such Fiscal Year, and audited income statements, cash flow statements and changes in members' equity for the Company and its consolidated subsidiaries (if any) for such Fiscal Year, and the accompanying notes thereto, that sets forth in comparative form figures for the corresponding period in the prior Fiscal Year, all in reasonable detail and fairly presenting the financial position and the results of operations of the Company and its consolidated subsidiaries (if any) as at the date thereof and for the Fiscal Year then ended, prepared in accordance with GAAP.

Ex. A § 7.2(c).

The Operating Agreement is governed by Delaware law, and the members agreed that the state and federal courts of Delaware would have exclusive jurisdiction over disputes related to the Agreement. Ex. A §§ 11.11, 11.12.

## ARGUMENT

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

I. **KRST DOES NOT STATE A CLAIM FOR BREACH OF THE BELLATOR OPERATING AGREEMENT**

To state a claim for breach of contract, a plaintiff must show: "(1) a contractual obligation; (2) a breach of that obligation by the defendant; and (3) resulting damage to the

plaintiff[]." *Kyle v. Apollomax, LLC*, 2013 WL 5954782, at *2 (D. Del. Nov. 1, 2013). KRST's fourth attempt to state a claim for breach of contract is fatally flawed because it does not allege a breach of any obligation in the Bellator Operating Agreement or resulting damages. For the reasons set forth below, Count I of the Amended Complaint should therefore be dismissed as a matter of law.

First, it is noteworthy that KRST's Amended Complaint does not allege that Bellator failed to provide KRST with the financial statements required by Section 7.2(c) of the Operating Agreement. To the contrary, the Amended Complaint ***admits*** that those financial statements were provided to KRST, and that Bellator is now providing those financial statements on a timely basis pursuant to terms of the Operating Agreement. *See* Am. Compl. ¶¶ 17, 20. (Bellator has provided timely financial disclosures to KRST since May 2015). To the extent that KRST is belatedly attempting to articulate a claim for breach of the Operating Agreement based on some alleged historical failure to timely provide the financial reports specified in the Operating Agreement, that claim is moot and the Court lacks subject matter jurisdiction over it. *Weiss v. Regal Collections*, 385 F.3d 337, 340 (3d Cir. 2004) ("When the issues presented in a case are no longer 'live' … the case becomes moot and the court no longer has subject matter jurisdiction." (citing *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)).

Second, recognizing that it has received the financial disclosures pursuant to the Bellator Operating Agreement, KRST appears to base its latest claim on conclusory allegations that an advertising agreement (which the Amended Complaint generally refers to as the "Programming/License Agreement") suggests that more revenue should be reflected in the financial statements. Am. Compl. ¶ 18. But as the Amended Complaint indicates, KRST was not a party to that Programming/License Agreement, and the Amended Complaint says nothing

about how KRST can assert that Bellator breached that Agreement. Under the pleading standards established by *Twombly* and *Iqbal*, KRST's allegations concerning the Programming/License Agreement are plainly insufficient to support a claim for breach of the Operating Agreement. *Iqbal*, 556 U.S. at 679 (the federal court's pleading standard "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions"). As *Twombly* and *Iqbal* make clear, a complaint is deficient "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (alteration in original). Here, KRST fails to provide any "further factual enhancement" for its "naked assertion" that it believes Bellator breached the Operating Agreement because KRST expected to see higher revenue in Bellator's financial statements. Thus, KRST's Amended Complaint fails to plead sufficient facts to state a claim for breach of the Operating Agreement and should be dismissed.

II.   KRST DOES NOT STATE A CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

To state a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff "must allege: [1] a specific implied contractual obligation, [2] a breach of that obligation by the defendant, and [3] resulting damage to the plaintiff." *Blaustein v. Lord Baltimore Capital Corp.*, 2012 WL 2126111, at *5 (Del. Ch. May 31, 2012). But KRST's Complaint does not identify any implied contractual obligation that was breached by Bellator, or any damages that flowed from any such breach. Instead, KRST appears to have added an implied covenant claim as a safety net, lest its fourth attempt to plead a breach of contract claim fails. That is not sufficient to state a claim for breach of an implied contractual obligation under Delaware law.

Under Delaware law, a plaintiff alleging breach of the implied covenant must identify a contractual gap in the express provisions of the Operating Agreement and thereafter

seek to imply a term to fill that gap.  Thus, when analyzing a claim for breach of the implied covenant and fair dealing, "a court first must … determine whether there is a [contractual] gap that needs to be filled."  *Allen v. El Paso Pipeline GP Co., L.L.C.*, 2014 WL 2819005, at *10 (Del. Ch. June 20, 2014).  Here, KRST does not allege that there is any particular contractual gap in the Operating Agreement that needs to be filled with an implied contractual term.  KRST's failure to identify a contractual gap in the Operating Agreement is fatal to its breach of the implied covenant and fair dealing claim.

Instead, KRST alleges generally that "*Bellator breach the implied covenant of good faith and fair dealing by unfairly dealing with Plaintiff and by acting in bad faith toward Plaintiff as alleged above*."  Am. Compl. ¶ 28.  KRST's assertion of "bad faith" highlights its profound misunderstanding of an implied covenant claim under Delaware law.  As Vice Chancellor Laster explained:

> The implied covenant of good faith and fair dealing is the doctrine by which Delaware law cautiously supplies terms to fill gaps in the express provisions of a specific agreement.  ***Despite the appearance in its name of the terms "good faith" and "fair dealing," the covenant does not establish a free-floating requirement that a party act in some morally commendable sense***.  Nor does satisfying the implied covenant necessarily require that a party have acted in subjective good faith.

*Id.* (emphasis added) (internal citation omitted).  Because KRST fails to identify any contractual gap in the Operating Agreement—and instead makes only conclusory allegations as to the "bad faith" of Bellator's compliance with the terms of the Operating Agreement—KRST's implied covenant claim is flawed and should be dismissed.

Similarly, KRST's attempt to maintain the implied covenant claim as an alternative to its breach of contract claim should not be permitted.  Delaware courts reject such efforts.  As Chancellor Bouchard noted in *Fortis Advisors LLC v. Dialog Semiconductor PLC*:

> [P]laintiff admits it does not believe that any gaps exist in the merger agreement from which to imply an additional contractual term, but it nonetheless seeks to maintain the implied covenant claim as an alternative legal theory in case the Court may disagree in the future. I reject this approach to pleading, and conclude that the failure to identify any gap in the merger agreement in which the implied covenant would operate warrants dismissal of that claim.

2015 WL 401371, at *1 (Del. Ch. Jan. 30, 2015). Here, KRST does not plead any facts to support its breach of the implied covenant claim. Instead, it relies on the same set of facts—that Bellator breached an express contractual obligation in the Operating Agreement to provide financial records to KRST—to claim that there was a breach of the implied covenant of good faith and fair dealing. Because KRST fails to identify any contractual gap unaddressed by the Operating Agreement, its implied covenant claim should be dismissed as a matter of law.

### III. BOTH CLAIMS SHOULD BE DISMISSED FOR FAILING TO IDENTIFY ANY DAMAGES RESULTING FROM BELLATOR'S ALLEGED BREACHES

KRST's claims for breach of contract and for breach of the implied covenant must be dismissed for the independent reason that KRST fails to identify any damages resulting from the alleged breach of the Operating Agreement.

To satisfy the damages element of a breach of contract claim, a plaintiff must plead that it "suffered damages as a result of the alleged breach." *Black Horse Capital, LP v. Xstelos Hldgs., Inc.*, 2014 WL 5025926, at *28 (Del. Ch. Sept. 30, 2014). A plaintiff must plead that: (1) plaintiff suffered damages; and (2) those damages are the result of the alleged breach. *See LaPoint v. AmerisourceBergen Corp.*, 2007 WL 2565709, at *9 (Del. Ch. Sept. 4, 2007) (for the damages prong of a breach of conflict claim, a plaintiff "must show both the existence of damages provable to a reasonable certainty, and that these damages flowed from defendant's violation of the contract").

8.

Although KRST has generally averred that it has suffered monetary damages in its Amended Complaint, it has not stated what those damages are or how those damages "flowed from" or are the result of Bellator's alleged breach of the Operating Agreement. For that reason alone, KRST's breach of contract and implied covenant claims should be dismissed.

IV. THE AMENDED COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE

As noted above, the Amended Complaint is KRST's fourth attempt to plead claims arising from the same common nucleus of operative facts. Defendants have incurred significant expense filing multiple motions demonstrating that each of KRST's efforts are fatally flawed and should be dismissed.[2] As this Court noted in its opinion dismissing an earlier version of this complaint, KRST has taken a "trial and error" approach to this matter without properly researching its legal theories or the appropriate court to adjudicate its claims. *Koloni Reklam, Sanayi, Ticaret LTD/STI v. Viacom, Inc.*, 2017 WL 726660, at *2, 5 (D. Del. Feb. 23, 2017).

KRST's original complaint in this Court fared no better; it essentially repeated legal theories that the defendants had previously identified as erroneous. For those reasons, this Court considered dismissing that complaint with prejudice, stating: "The court questions whether dismissal should be with prejudice considering that this is plaintiff's third attempt to go forward on the same complaint, and plaintiff has not corrected a key deficiency of which it was made aware on the first try." *Id*. at *5. Although the Court allowed KRST to try once more, it has

---

[2] KRST first filed its complaint in a California state court (despite a Delaware forum selection clause in the Operating Agreement), and then filed the same complaint in the Delaware Superior Court (despite pleading equitable claims that the Superior Court lacked subject matter jurisdiction to adjudicate). *Id*. at *2. Each of those procedural misfires led to significant costs and expense to address.

9.

failed to state a claim.  Under these circumstances, the Amended Complaint should be dismissed with prejudice.

10.

## CONCLUSION

For the reasons stated above, Defendant respectfully requests that the Court dismiss the Amended Complaint with prejudice.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jon E. Abramczyk*
Jon E. Abramczyk (#2432)
D. McKinley Measley (#5108)
Daniel T. Menken (#6309)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jabramczyk@mnat.com
dmeasley@mnat.com
dmenken@mnat.com
  *Attorneys for Bellator Sport Worldwide LLC*

May 17, 2017