IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| KOLONI REKLAM, SANAYI, TICARET LTD/STI, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 16-285-JFB-SRF |
| BELLATOR SPORT WORLDWIDE LLC | ) ) ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

Presently before the court in this breach of contract case is a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by defendant Bellator Sport Worldwide LLC ("Bellator" or "Defendant"). (D.I. 19) For the following reasons, I recommend granting Defendant's motion.

### II. BACKGROUND

#### A. The Parties

Defendant Bellator is a mixed martial arts promotion company that was founded in 2008. (D.I. 17 at ¶ 1) Bellator currently has two members: (1) MTV Networks[1] ("MTVN"), which holds approximately 99% of Bellator through MMA HoldCo, Inc. ("MMA HoldCo"), and (2) Plaintiff Koloni Reklam, Sanayi, Ticaret, LTD/STI ("KRST" or "Plaintiff"), which holds a 1% interest. (*Id.* at ¶ 14)

---

[1] Viacom, Inc. ("Viacom") is a parent corporation of MTVN. (D.I. 17 at ¶ 2) Viacom is a global mass media company with interests in cinema and cable television, including MTV, Spike TV, Comedy Central, and Paramount Pictures. (*Id.*)

KRST is a company based in Turkey. (*Id.* at ¶ 5) Bellator is a limited liability company organized under the laws of the State of Delaware, with its principal place of business in Santa Monica, California. (*Id.* at ¶ 6) This court has jurisdiction pursuant to 28 U.S.C. § 1332(a).

### B. The Operating Agreement

Bellator is governed by its Third Amended and Restated Operating Agreement (the "Operating Agreement"). (D.I. 20, Ex. A) The Operating Agreement itself is governed by Delaware law. (*Id.* at § 11.11) The parties to the Operating Agreement are Bellator and its members. (*Id.* at 1; App'x A)

Since October 2014, Bellator has been managed by a three-member committee (the "Management Committee"). (D.I. 20 at 5) Pursuant to the Operating Agreement, "all powers to control and manage the Business and affairs of [Bellator] shall be exclusively vested in the Management Committee," except as provided otherwise. (D.I. 20, Ex. A at § 4.3) MTVN has the right to designate the members of the Management Committee so long as MTVN and/or its affiliates collectively hold at least a 15% interest. (*Id.* at § 4.1(b))

In accordance with 6 Del. C. § 18-1101(c),[2] the Operating Agreement eliminates all fiduciary duties for members. Specifically, Section 4.11 provides that "[a] member shall not have any duties, fiduciary or otherwise, to [Bellator] or to the other Members, other than the contractual obligations of such Members set forth herein." (*Id.* at § 4.11)

Section 7.2(b) provides that each member has the right to reasonable access and to inspect the books and records listed in Sections 7.1(a) and 7.2(a) "for any purpose reasonably related to such Member's interest as a member of [Bellator]." (*Id.* at § 7.2(b)) Section 7.2(c)

---

[2] 6 Del. C. § 18-1101(c) allows a limited liability company agreement to "expand, restrict, or eliminate" the fiduciary duties of a member, manager, or other person that otherwise has duties in law or equity or is bound by the agreement, except the limited liability company agreement may not eliminate the implied contractual covenant of good faith and fair dealing.

2

requires Bellator, at the end of each fiscal quarter, to deliver to members the company's unaudited balance sheets, income statements, cash flow statements, and changes in members' equity in the company. (*Id.* at § 7.2(c)) Section 7.2(c) also requires Bellator, at the end of each fiscal year, to deliver to members the company's audited balance sheets, income statements, cash flow statements, and changes in members' equity in the company. (*Id.*)

### C. Procedural History

On July 13, 2015, KRST filed a complaint in a California state court naming Viacom and Does 1-20 as defendants. (D.I. 8 at 5) The California complaint asserted claims for breach of the Operating Agreement, breach of the implied covenant of good faith and fair dealing, breach of common law fiduciary duties, an accounting, and unjust enrichment. (*Id.*) Viacom filed a motion to stay or dismiss the case, which KRST opposed. (*Id.*) On October 30, 2015, the California court dismissed the action, recognizing that it was barred by the Delaware forum selection clause in the Operating Agreement. (*Id.*)

On January 22, 2016, KRST re-filed the same complaint in Delaware Superior Court, this time adding Kevin Kay ("Kay"), a Bellator manager, as a defendant. (*Id.*) On March 9, 2016, Viacom and Kay filed a motion to dismiss. (*Id.*) Subsequently, KRST dismissed its action, recognizing belatedly that the Delaware Superior Court lacked subject matter jurisdiction to adjudicate the equitable claims asserted. (*Id.*)

On April 21, 2016, KRST filed the same complaint in the United States District Court for the District of Delaware. (D.I. 1) On July 8, 2016, Viacom and Kay filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). (D.I. 6) On February 23, 2017, the court granted Viacom and Kay's motion, and the complaint was dismissed without prejudice.[3] (D.I.

---

[3] In dismissing the complaint, the court found that: (1) Viacom was not a party to the Operating Agreement and therefore could not have breached said Operating Agreement or the implied

3

16) On March 23, 2017, KRST filed its First Amended Complaint ("Amended Complaint"). (D.I. 17) The Amended Complaint, the operative complaint for purposes of the instant motion, asserts claims against Bellator for breach of contract and breach of the implied covenant of good faith and fair dealing for Bellator's "failure to provide Plaintiff with accurate and complete financials under the [Operating Agreement]." (D.I. 17 at ¶ 4) On May 17, 2017, Bellator filed the current motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (D.I. 19) The court heard oral argument on October 18, 2017.

### III. LEGAL STANDARD

Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the complaint and view them in the light most favorable to the plaintiff. *Umland v. Planco Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008).

---

covenant of good faith and fair dealing, despite KRST's veil piercing theory; (2) the breach of fiduciary duty claim against Kay was derivative ("[p]laintiff appears to have also inartfully pled a claim for breach of fiduciary duty against Kay based on the failure to provide 'regular financial updates' and 'information concerning the operation of Bellator' to minority members...which should be brought as a breach of contract claim."); (3) the unjust enrichment claim was derivative in nature for the same reasons that the breach of fiduciary duty claim was derivative (the claim sought recovery for the loss of income to Bellator); and (4) the accounting claim failed because the Operating Agreement does not provide a right to an accounting (Section 7.2(b) only entitles members to access and inspect the books and records of Bellator subject to certain limitations). *See Koloni Reklam, Sanayi, Ticaret LTD/STI v. Viacom, Inc.*, No. CV 16-285-SLR, 2017 WL 726660, at *3-5 (D. Del. Feb. 23, 2017). Despite Bellator's request, the court dismissed the complaint without prejudice because it was the first time a court addressed the substantive allegations in the complaint, although "the court question[ed] whether dismissal should be with prejudice considering that this [wa]s plaintiff's third attempt to go forward on the same complaint, and plaintiff has not corrected a key deficiency of which it was made aware on the first try." *Id.* at *5.

4

To state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the complaint must set forth sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A claim is facially plausible when the factual allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 555-56.

When determining whether dismissal is appropriate, the court must take three steps.[4] *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must identify the elements of the claim. *Iqbal*, 556 U.S. at 675. Second, the court must identify and reject conclusory allegations. *Id.* at 678. Third, the court should assume the veracity of the well-pleaded factual allegations identified under the first prong of the analysis, and determine whether they are sufficiently alleged to state a claim for relief. *Id.*; *see also Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). The third prong presents a context-specific inquiry that "draw[s] on [the court's] experience and common sense." *Id.* at 663-64; *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). As the Supreme Court instructed in *Iqbal*, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

---

[4] Although *Iqbal* describes the analysis as a "two-pronged approach," the Supreme Court observed that it is often necessary to "begin by taking note of the elements a plaintiff must plead to state a claim." 556 U.S. at 675, 679. For this reason, the Third Circuit has adopted a three-pronged approach. *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 n.7 (3d Cir. 2010); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

5

## IV. DISCUSSION

### A. Count I - Breach of Contract

Count I of the Amended Complaint alleges that Bellator breached the Operating Agreement by failing to comply with the reporting obligations of Section 7.2(c), and by causing information related to Bellator's operations to be withheld from KRST as a minority member. (D.I. 17 at ¶¶ 22-25) Bellator argues that KRST has not alleged a breach of any obligation in the Operating Agreement or resulting damages. (D.I. 20 at 7)

Under Delaware law,[5] to state a claim for breach of contract, a plaintiff must show: "(1) a contractual obligation; (2) a breach of that obligation by the defendant; and (3) resulting damage to the plaintiff[]." *Greenstar, LLC v. Heller*, 814 F. Supp. 2d 444, 450 (D. Del. 2011) (citing *WaveDivision Holdings, LLC v. Millennium Digital Media Systems, L.L.C.*, 2010 WL 3706624, *13 (Del. Ch. 2010)). Bellator argues that KRST has not alleged a breach of any obligation in the Operating Agreement because KRST was provided with the financial statements owed to it under the Operating Agreement. (D.I. 20 at 7) Section 7.2(c) requires Bellator, at the end of each fiscal quarter, to deliver to members the company's unaudited balance sheets, income statements, cash flow statements, and changes in members' equity in the company. (D.I. 20, Ex. A at § 7.2(c)) Section 7.2(c) also requires Bellator, at the end of each fiscal year, to deliver to members the company's audited balance sheets, income statements, cash flow statements, and changes in members' equity in the company. (*Id.*) In May 2015, Bellator provided KRST with such financial statements, and the Amended Complaint admits that those financial statements

---

[5] Although federal law governs the pleading standard, Delaware law governs the Operating Agreement and underlying substantive claims. (D.I. 20, Ex. A at § 11.11)

6

were provided to KRST. (D.I. 17 at ¶ 17) Therefore, Bellator has not breached its obligation under the Operating Agreement.[6]

KRST contends, however, that these statements "are inaccurate, incomplete, and materially misstated," in breach of Bellator's obligation to provide accurate and complete financial statements. (*Id.*; D.I. 24 at 8) To support this assertion, KRST alleges that "these [financial] statements should reflect hundreds of millions of dollars in revenues due to Bellator under an advertising agreement that Bellator entered into with a subsidiary of Viacom concerning the production of Bellator events. Under this agreement, Bellator is due 50% of all advertising revenues generated by such events." (D.I. 17 at ¶ 18) KRST contends that "countless advertisements have appeared during the nearly 200 Bellator events that have taken place to date, including advertisements from major beer companies, motion picture studios, and video game manufacturers." (*Id.* at ¶ 19) KRST is not a party to this advertising agreement. (*Id.* at ¶ 18) Nonetheless, KRST alleges on information and belief that the $505,000 in reported

---

[6] Bellator argues that "if KRST is belatedly attempting to articulate a claim for breach of the Operating Agreement based on some alleged historical failure to timely provide the financial reports specified in the Operating agreement," that claim is moot and the court lacks subject matter jurisdiction over it. (D.I. 20 at 7) In the Amended Complaint, KRST alleges that "prior to May 2015, [it] had not been provided [] any [] financial reports by [Bellator] for a year, with a fifteen-month gap prior to that." (D.I. 17 at ¶ 17) Article III of the Constitution limits federal-court jurisdiction to "cases" and "controversies." U.S. Const., Art. III, § 2. The Supreme Court has interpreted this requirement to demand that "an actual controversy ... be extant at all stages of review, not merely at the time the complaint is filed." *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 669 (2016), *as revised* (Feb. 9, 2016) (citing *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997). When the issues presented in a case are no longer "live," the case becomes moot. *Weiss v. Regal Collections*, 385 F.3d 337, 340 (3d Cir. 2003) (citing *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)). KRST does not address this allegation in its opposition brief, and it does not appear that KRST is claiming breach of contract for these prior delays. (*See* D.I. 24) If so, the court does not address these claims in this Report and Recommendation because such claims are deemed moot by the financial statements provided by Bellator in May 2015.

7

revenues provided by Bellator is "grossly inaccurate and does not reflect the hundreds of millions in advertising revenue Bellator is owed under the advertising agreement." (*Id.* at ¶ 20)

Although the court must accept as true all factual allegations in the complaint and view them in the light most favorable to Plaintiff, it must reject all conclusory allegations. *Umland*, 542 F.3d at 64; *Iqbal*, 556 U.S. at 675. Moreover, a plaintiff may plead on information and belief only "where it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control — so long as there are no 'boilerplate and conclusory allegations' and '[p]laintiffs ... accompany their legal theory with factual allegations that make their theoretically viable claim plausible.'" *McDermott v. Clondalkin Grp., Inc.*, 649 F. App'x 263, 267 (3d Cir. 2016). Here, although KRST is not a party to this advertising agreement, this does not mean that the information is "peculiarly within the defendant's control." Section 7.2(b) of the Operating Agreement states that "any [m]ember has the right to have reasonable access to and inspect the items specified in Section 7.1(a) for any purpose reasonably related to such [m]ember's interest as a [m]ember of the [c]ompany...."[7] (D.I. 20, Ex. A at § 7.2(b)) KRST was given the financial statements it was owed, and also had access to Bellator's books and records. If KRST questioned the accuracy of the financial statements it received from Bellator, it should have exercised its right under the Operating Agreement to inspect Bellator's books and records at any time to confirm the veracity of the financial statements it received. Doing so may have given KRST the requisite factual information in order to support its claims. KRST has not

---

[7] In fact, in dismissing KRST's original complaint, the District Court previously highlighted this section of the Operating Agreement to Plaintiff. In connection with the first motion to dismiss, KRST asked for discovery to determine whether an agency relationship existed between Viacom and MMa HoldCo. (D.I. 11 at 8) However, the court dismissed KRST's claim because it found that KRST did not show that this information could not be obtained through a books and records request under Section 7.2(b) of the Operating Agreement. *Koloni Reklam, Sanayi, Ticaret LTD/STI*, 2017 WL 726660, at *3 n.3.

8

shown that information relating to the veracity of the financial statements cannot be obtained through such a books and records request under Section 7.2(b) of the Operating Agreement. As such, KRST may not base its pleadings on "information and belief," and cannot rely on conclusory allegations to survive the *Twombly* and *Iqbal* analysis on a motion to dismiss.

KRST relies on two cases as support for its contention that its conclusory allegations are sufficient to defeat Bellator's motion to dismiss. First, in *Caiola*, the Delaware Court of Chancery denied defendant's motion to dismiss plaintiff's breach of contract claim, finding that the complaint "plead[] sufficient facts from which it reasonably could be inferred that [defendant] prepared and distributed inaccurate and misleading financial reports" because plaintiffs "allege[d] that defendant manipulated cash flow statements...which may have given plaintiffs the incorrect impression that the [c]ompany's financial position was strong." *2009 Caiola Family Trust v. PWA, LLC*, 2014 WL 7232276, at *8 (Del. Ch. Dec. 18, 2014). However, in *Caiola*, the court declined to dismiss the complaint because it contained specific allegations that the financial statements were misleading based on plaintiff's analysis of the accounting treatment reflected in the financial statements. *Id.* at *6. No such factual allegations appear in the complaint at bar. Moreover, *Caiola* was decided under the "reasonable conceivability" Delaware Chancery standard, which "determines whether plaintiff's well-pleaded complaint stated a claim that is provable under any reasonably conceivable set of circumstances." *See id.*; *Black Horse Capital, LP v. Xstelos Holdings, Inc.*, 2014 WL 5025926, at *11 (Del. Ch. Sept. 30, 2014). In the case at bar, plausibility, not reasonable conceivability, is the applicable standard. *Twombly*, 550 U.S. at 570. However, even if the complaint were reviewed under the less stringent "reasonable conceivability" standard, KRST still did not make the requisite specific factual allegations to survive Bellator's motion to dismiss.

9

Second, KRST relies on *Fisher v. Big Squeeze*, wherein the court denied defendant's motion to dismiss plaintiff's breach of contract claim that defendant breached its obligation under their shareholder agreement to provide a "monthly profit and loss statement." *Fisher v. Big Squeeze (N.Y.), Inc.*, 349 F. Supp. 2d 483, 489-90 (E.D.N.Y. 2004). The court found that plaintiff's allegation that defendant "understate[d] the [c]orporation's revenue" supported its claim that defendant had breached its obligation. *Id.* at 489. This case is also inapposite. There, plaintiff entered into shareholder, licensing, and commission agreements with defendant in exchange for his sale of product formulas and trademarks. *Id.* at 482. Most importantly, the plaintiff was a party to each of those agreements, and was, therefore, able to make sufficient factual pleadings in the complaint for its breach of contract claim. *Id.* This case was also decided pre-*Twombly* and applied a more relaxed federal notice pleading standard than is now applicable on a motion to dismiss. Neither case lends support to KRST's reliance upon conclusory allegations in order to survive Bellator's motion to dismiss.

Although KRST has now named the correct defendant in its breach of contract claim, *see Koloni Reklam, Sanayi, Ticaret LTD/STI*, 2017 WL 726660, at *3, the complaint is still deficient and, as such, Count I should be dismissed for failure to state a claim.

### B. Count II - Breach of Implied Covenant of Good Faith and Fair Dealing

Count II of the Amended Complaint alleges that Bellator breached the covenant of good faith and fair dealing implied in the Operating Agreement by "unfairly dealing with Plaintiff and by acting in bad faith toward Plaintiff...." (D.I. 17 at ¶¶ 26-29)

The implied covenant of good faith and fair dealing "requires a party in a contractual relationship to refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits of the bargain." *Dunlap v. State Farm*

10

*Fire & Cas. Co.*, 878 A.2d 434, 442 (Del. 2005). Generally, "to successfully plead a breach of an implied covenant of good faith and fair dealing, the plaintiff must allege a specific implied contractual obligation, a breach of that obligation by the defendant, and resulting damage to the plaintiff." *Black Horse Capital*, 2014 WL 5025926, at *28 (citing *Blaustein v. Lord Baltimore Capital Corp.*, 2012 WL 2126111, at *5 (Del. Ch. May 31, 2012)).

When presented with an implied covenant claim, a court must first engage in the process of contract construction to determine whether there is a gap that needs to be filled. *Allen v. El Paso Pipeline GP Co., L.L.C.*, 2014 WL 2819005, at *10 (Del. Ch. June 20, 2014) (citing Mohsen Manesh, *Express Contract Terms and the Implied Contractual Covenant of Delaware Law*, 38 Del. J. Corp. L. 1, 19 (2013)). During this phase, the court decides whether the language of the contract expressly covers a particular issue, in which case the implied covenant will not apply, or whether the contract is silent on the subject, revealing a gap that the implied covenant might fill. *Id.* A court must determine whether a gap exists because "[t]he implied covenant will not infer language that contradicts a clear exercise of an express contractual right." *Nemec v. Shrader*, 991 A.2d 1120, 1127 (Del. 2010). "[I]mplied covenant analysis will only be applied when the contract is truly silent with respect to the matter at hand...." *Allied Capital Corp. v. GC-Sun Hldgs., L.P.*, 910 A.2d 1020, 1032 (Del. Ch. 2006). If a contractual gap exists, then the court must determine whether the implied covenant should be used to supply a term to fill the gap. Not all gaps should be filled, however, because filling the gap with the implied covenant grants parties "contractual protections that they failed to secure for themselves at the bargaining table." *Aspen Advisors LLC v. United Artists Theatre Co.*, 843 A.2d 697, 707 (Del. Ch. 2004), *aff'd*, 861 A.2d 1251 (Del. 2004). A court must not use the implied covenant to

"rewrite [a] contract" that a party "now believes to have been a bad deal." *Nemec*, 991 A.2d at 1126. "Parties have a right to enter into good and bad contracts, the law enforces both." *Id.*

KRST did not identify in the Amended Complaint, its opposition brief, or at oral argument any specific implied contractual obligation that was breached by Bellator. Stated differently, KRST has failed to identify any implied contract term that it would have this court read into the Operating Agreement. Instead, KRST mimics the language of its contract claim[8] to argue that the same alleged actions and failures cited as evidence of Bellator's alleged breach of Section 7.2(c) of the Operating Agreement also breached the implied covenant of good faith and fair dealing by "unfairly dealing with Plaintiff and by acting in bad faith toward Plaintiff...." (D.I. 17 at ¶¶ 26-29) Under Delaware law, despite the appearance in its name of the terms "good faith" and "fair dealing," the covenant does not establish a free-floating requirement that a party act in some morally commendable sense. *Allen*, 2014 WL 2819005, at *10 (internal citations omitted). Nor does satisfying the implied covenant necessarily require that a party have acted in subjective good faith. *Id.* (citing *ASB Allegiance Real Estate Fund v. Scion Breckenridge Managing Member, LLC*, 50 A.3d 434, 442, 444 (Del. Ch. 2012)). When used with the implied covenant, the term "good faith" contemplates "faithfulness to the scope, purpose, and terms of the parties' contract." *Id.* (citing *Gerber*, 67 A.3d at 419). The concept of "fair dealing" similarly refers to "a commitment to deal 'fairly' in the sense of consistently with the terms of the parties' agreement and its purpose." *Id.* The parameters of both concepts turn not on a court's beliefs about what was morally or equitably appropriate under the circumstances, but

---

[8] In both its opposition breach and at oral argument, KRST conceded that "to the extent discovery reveals, however, that any such [breach of the implied covenant] claim is coextensive with [KRST]'s breach of contract claim, [KRST] agrees that its breach of the implied covenant claim should not proceed to trial." However, KRST has not met its burden for the court to allow this claim to proceed beyond the pleadings and to discovery.

12

rather "on the contract itself and what the parties would have agreed upon had the issue arisen when they were bargaining originally." *Id.* The Operating Agreement expressly covers the issue of financial statements, and based on the pleadings, Bellator complied with this term.

Nonetheless, KRST argues that this claim too should be permitted to move forward to discovery, and relies on *Bakerman v. Sidney Frank Importing Co.* for this assertion. 2006 WL 3927242 (Del. Ch. Oct. 10, 2006). In *Bakerman*, the Court of Chancery, under the reasonably conceivable standard, denied defendant's 12(b)(6) motion for plaintiff's claim of breach of the implied covenant of good faith and fair dealing. *See id.* Again, KRST's reliance on *Bakerman* is misplaced. There, most importantly, the plaintiff alleged a breach of a specific implied contractual obligation. *Id.* at *20. Because KRST fails to identify any contractual gap in the Operating Agreement and instead makes only conclusory allegations as to Bellator's "bad faith" compliance with the terms of the Operating Agreement, KRST's implied covenant claim should be dismissed. *See, e.g., Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 901 A.2d 106, 116 (Del. 2006) (upholding dismissal of implied covenant claim where plaintiff failed to identify "any implied contract term that it would have the trial court read into the contract"); *see also Fitzgerald v. Cantor*, 1998 WL 842316, at *1 (Del. Ch. Nov. 10, 1998); *Matthew v. Laudamiel*, 2012 WL 605589, at *16 (Del. Ch. Feb. 21, 2012); *Fortis Advisors LLC v. Dialog Semiconductor PLC*, 2015 WL 401371 (Del. Ch. Jan. 30, 2015).

Moreover, although KRST failed to identify any specific implied contractual obligation that was breached by Bellator, there is no gap apparent in the Operating Agreement that needs to be filled. The Delaware Court of Chancery held in *Latestco, L.P. v. Wayport, Inc.*, that the implied covenant of good faith and fair dealing does not apply as a matter of law to negotiated provisions of a contract like the provisions at issue here. 2009 WL 2246793, at *9 n.33 (Del. Ch.

13

July 24, 2009). There, the court dismissed plaintiffs' complaint after they alleged that defendants breached the implied covenant under an agreement by failing to inform the plaintiffs about material inside information. *Id.* The court held that such rights are routinely negotiated for, and are not a proper subject for a claim of breach of the covenant of good faith and fear dealing. *Id.* "Absent contractual information rights, the stockholder must rely on 8 Del. C. § 220[9] as a basis for rights to certain information. The covenant of good faith and fair dealing does not expand those rights." *Id.* Section 7.2(b) of the Operating Agreement is analogous with 8 Del. C. § 220, and gives KRST the right to have reasonable access to and inspect Bellator's books and records. (D.I. 20, Ex. A at § 7.2(b)) This provision grants KRST an express right which, notably, KRST did not exercise.

Accordingly, Count II should be dismissed for failure to state a claim.

### C. Damages as to Counts I and II

Bellator argues that both claims should also be dismissed for KRST's failure to identify any damages resulting from Bellator's alleged breaches. (D.I. 20 at 10) Although the court finds that both Counts I and II should be dismissed for failure to state a claim for other reasons, *see* §§ IV(A), (B), *supra*, for the sake of completeness, this Report and Recommendation addresses this argument.

KRST alleges in Count I of the Amended Complaint that "as a direct and proximate result of Bellator's breach of the Operating Agreement and Amendments thereto, Plaintiff has been damaged in an amount to be proven at trial." (D.I. 17 at ¶ 25) As for Count II, KRST alleges that "as a direct result of the breaches of the implied covenant of good faith and fair dealing, as alleged herein, Plaintiff has suffered damages in an amount to be proven at trial." (*Id.*

---

[9] 8 Del. C. § 220 gives any stockholder the right to inspect, for any proper purpose, the corporation's books and records.

14

at ¶ 29) Bellator argues that this general averment is not enough, and KRST must state what the alleged damages are, or how they "flowed from" or are the result of Bellator's alleged breach of the Operating Agreement. (D.I. 20 at 11) KRST contends that its allegations of damages are sufficient because it need not prove damages with reasonable certainty at the pleading stage. (D.I. 24 at 10) KRST argues that Bellator's fifteen month delay in providing it financial statements caused it to suffer damages by its inability to track the performance of the company and value its shares during this time. (*Id.*) Moreover, KRST contends that "if discovery shows, as [KRST] alleges it will, that the financials received understated the revenues of the company and if any of those missing revenues have been distributed to Viacom as a member of Bellator, but not [KRST], that is a direct damage that [KRST] suffered." (*Id.* at 10-11)

In alleging damages, KRST does not make any factual allegations. The allegations made are, in essence, legal rather than factual allegations. The Third Circuit has explained that when presented with a Rule 12(b)(6) motion, the court must undertake a two-step analysis: "first, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Fowler*, 578 F.3d at 210-211. For purposes of resolving a motion to dismiss, "plausible" does not mean "probable," but it requires more than "sheer possibility." *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 556. Although KRST is correct that it need not prove damages at the pleading stage, it has not made any factual allegations as to damages that rise to the level of plausibility. Instead, in its answering brief and at oral argument, KRST asks the court to speculate as to damages.

15

Accordingly, Counts I and II of the Amended Complaint should also be dismissed as a result of KRST's failure to make the requisite factual allegations as to alleged economic loss.

## V. CONCLUSION

Bellator moves for dismissal of the Amended Complaint with prejudice. (D.I. 20 at 8) The District Court first dismissed the complaint without prejudice, because it was the "first time a court addressed the substantive allegations in the complaint."[10] *Koloni Reklam, Sanayi, Ticaret LTD/STI*, 2017 WL 726660, at *5. However, this is now KRST's fourth attempt to litigate claims in a deficient complaint. Accordingly, for the foregoing reasons, I recommend the court grant Defendant's motion to dismiss pursuant to Rule 12(b)(6), and dismiss the Amended Complaint with prejudice. (D.I. 19)

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objection and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

---

[10] Defense counsel stressed at oral argument and in its opening brief that Judge Sue L. Robinson seriously considered dismissing the complaint first filed in the District Court with prejudice. However, at oral argument, KRST's counsel characterized Judge Robinson's ruling as "allowing" KRST another opportunity to assert its claims, suggesting that the claims at issue were likely meritorious. It cannot be disputed that Judge Robinson explained that the court considered whether dismissal should be with prejudice "considering that this [wa]s plaintiff's third attempt to go forward on the same complaint, and plaintiff has not corrected a key deficiency of which it was made aware on the first try." *Koloni Reklam, Sanayi, Ticaret LTD/STI*, 2017 WL 726660, at *5. Nevertheless, Judge Robinson dismissed without prejudice and gave KRST yet another opportunity for correcting the pleading, which has once again proved futile.

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: November 8, 2017

Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE